UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **PENNY MORRIS AND JOHN MORRIS** | **CIVIL ACTION NO.  3:09-CV-854** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **WYETH, INC., ET AL** | **MAG.  JUDGE KAREN L. HAYES** |

RULING

Pending before the Court is a Motion to Dismiss filed by Defendants Actavis Elizabeth LLC, Teva Pharmaceuticals USA, Inc., and PLIVA, Inc. ("Generic Defendants") [Doc. No. 183]. Plaintiffs Penny Morris and John Morris filed an opposition to the motion [Doc. No. 195], and Generic Defendants filed a reply.  [Doc. No. 209].

For the following reasons, Generic Defendants' Motion to Dismiss is GRANTED, and Plaintiffs' claims against these Defendants are DISMISSED WITH PREJUDICE.

I.   BACKGROUND

Penny Morris ("Morris") ingested the generic prescription drug, metoclopramide.  The brand-name formulation of the drug is Reglan.  After taking metoclopramide for over two years, Morris developed tardive dyskinesia, a neurological condition.  Morris filed suit against Generic Defendants, based on a failure to warn theory under the Louisiana Products Liability Act ("LPLA").  [Doc. No. 1].

On January 27, 2011, this Court stayed proceedings against Generic Defendants because

the United States Supreme Court granted certiorari to a collection of lawsuits with essentially the same fact pattern as these proceedings. [Doc. No. 174]. The Supreme Court decided these lawsuits in *Pliva, Inc. v. Mensing*, 564 U.S. ___, 131 S.Ct. 2567, 180 L.Ed. 2d 580 (2011), on June 23, 2011. In *Mensing*, the Supreme Court held that federal law governing labeling of pharmaceuticals preempts state law failure to warn claims. Under Food and Drug Administration ("FDA") regulations, generic drug manufacturers are required to use the same warning labels that the FDA requires brand-name manufacturers to affix to their products. Because FDA regulations prohibit generic manufacturers from unilaterally changing or strengthening their product labeling without prior FDA approval, the Supreme Court held that the federal regulations preempt state law failure to warn claims against generic drug manufacturers.

## II. LAW

Although titled a Motion to Dismiss [Doc. No. 183], Generic Defendants refer to FED. R. CIV. P. 12(c), which is applicable to a motion for judgment on the pleadings. A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a Rule 12(b)(6) motion to dismiss.[1] *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). Rule 12(c) or 12(b)(6) motions should be granted when, viewing the alleged facts in the light most favorable to the plaintiff, the complaint fails to state a claim that is facially plausible. *Id.* (citing *Bell Atl. Corp.v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 Fed. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

---

[1] In order to avoid confusion, the Court will use Generic Defendants' terminology.

### III. DISCUSSION

In *Mensing*, the plaintiffs were prescribed Reglan by their physicians and received generic Reglan, i.e. metoclopramide, from their pharmacists. The plaintiffs alleged that their long-term use of metoclopramide resulted in tardive dyskinesia and sought remedies under state tort law against the generic manufacturers. The consolidated suit heard by the Supreme Court included a plaintiff from Louisiana. The Louisiana plaintiff sought damages through the LPLA under the principle that "a manufacturer's duty to warn includes a duty to provide adequate instructions for safe use of a product." *Mensing*, 131 S.Ct. at 2573 (citing *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 269-70 (5th Cir. 2002)); *See* LA. REV. STAT. 9:2800.57.

The Supreme Court noted that the parties did not dispute that, if the plaintiffs' allegations were true, then state tort law "required the Manufacturers [of the generic drug, metoclopramide] to use a different, safer label." 131 S.Ct. at 2574. However, the *Mensing* decision pointed out that federal laws, as promulgated by the FDA, impose more complex drug labeling requirements than do state tort laws. *Id*. The conflict between the state and federal requirements led the Supreme Court to conclude that an impossibility, or conflict, preemption exists because it is impossible for generic manufacturers to simultaneously comply with federal and state laws.[2] *Id*. at 2579.

The Supreme Court adopted the FDA's interpretation of its own regulation, which is that manufacturers seeking to market a new drug must demonstrate to the FDA the safety and efficacy of the new drug and that its warning label is accurate and effective. On the other hand, this

---

[2] Pointing out that, "[t]he only action the [generic] Manufacturers could independently take - asking for FDA's help - is not a matter of state law concern," the Supreme Court described how plaintiffs' state law tort claims against the generic manufacturers are preempted. 131 S.Ct. at 2581.

interpretation also means that a generic manufacturer seeking FDA approval must show that the safety and efficacy labeling for the generic product is *identical* to the labeling approved for its brand-name equivalent. *Id*.

The practical effect of the *Mensing* holding is that generic drug manufacturers who comply with the FDA requirement that they mimic the brand-name manufacturers' warning labels cannot be found liable under state tort law for failure to warn. The Supreme Court acknowledged that its ruling created a conundrum when viewed alongside its earlier decision, *Wyeth v. Levine*, 555 U.S. 555 (2009) (manufacturers of brand-name drugs are subject to liability under state law failure to warn actions): "We recognize that from the perspective of [the plaintiffs], finding pre-emption here but not in *Wyeth* makes little sense. Had [plaintiffs] taken Reglan, the brand-name drug prescribed by their doctors, *Wyeth* would control and their lawsuits would not be pre-empted." 131 S.Ct. at 2581.

In her opposition, Morris argues that numerous Supreme Court decisions pertaining to express preemption should control here instead of *Mensing*. [Doc. No. 195, pp. 7-15]. However, express preemption is not applicable here because the Supreme Court clearly identified the conflict between the LPLA and the FDA labeling rules as a case of conflict or impossibility preemption. *Mensing*, 131 S.Ct. at 2577-78. Morris also cites Fifth Circuit and Louisiana cases that are not applicable here because they either do not involve FDA rules governing pharmaceuticals or were decided prior to *Mensing*. [Doc. No. 195, pp. 7-15].

Last, Morris argues that Generic Defendants' failure to utilize various FDA-recommended "communication tools" for the purpose of reporting newly identified product risks without seeking labeling changes suggests that the preemption described in *Mensing* should not preclude state law failure to warn claims. [Doc. No. 195, pp. 17-18]. One example is a "Dear

Doctor" letter where a manufacturer sends additional warnings to prescribing physicians. *Mensing*, 131 S.Ct at 2576. This argument is not well-founded because the Supreme Court explicitly stated that a Dear Doctor letter bearing substantial new warning information would run afoul of FDA regulations because it would be inconsistent with the drug's approved labeling. *Id*. Accordingly, Morris's argument that Generic Defendants' failure to pursue all possible alternatives suggested by earlier FDA recommendations runs counter to the impossibility preemption identified by the Supreme Court when it deferred to the FDA's interpretation of its regulations.

On January 11, 2010, this Court dismissed all of Morris's claims against Generic Defendants that did not arise under the LPLA. [Doc. No. 110]. As a result, Morris's Fourth Amended Complaint sought relief under the LPLA under theories of defective construction or composition, defective design, breach of express warranty, and inadequate warning. [Doc. No. 142, pp. 11-12]. However, Morris's factual allegations in support of these theories all sound in failure to warn. [*See* Doc. No. 195, pp. 20-24]. With the exception of the failure to warn claim, none of Morris's allegations under the LPLA do more than recite the elements of a cause of action and allege no facts to support those claims. Therefore, Morris has failed to state a claim for which relief can be granted in her remaining claims under the LPLA. Finally, the impossibility preemption described in *Mensing* precludes Morris from asserting her remaining claims against Generic Defendants.

## IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss [Doc. No. 183], pursuant to Rule 12(b)(6) and/or 12(c) of the Federal Rules of Civil Procedure, filed by Defendants Actavis

Elizabeth LLC, Teva Pharmaceuticals USA Inc., and PLIVA, Inc. is GRANTED, and the claims against these Defendants are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 19th day of October, 2011.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE