RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
BY_____ DATE 2/23/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| PENNY MORRIS AND JOHN MORRIS | CIVIL ACTION NO. 09-0854 |
| VERSUS | JUDGE ROBERT G. JAMES |
| WYETH, INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is Plaintiff's Motion to Alter and/or Amend Judgment. [Doc. No. 214]. Plaintiffs request that the Court alter and/or amend its October 19, 2011 Judgment [Doc. No. 213] dismissing Defendant manufacturers of the generic drug metoclopramide from a lawsuit arising under the Louisiana Products Liability Act ("LPLA"), LA. REV. STAT. ANN. §§ 9:2800.51-.60. For the following reasons, Plaintiffs' Motion is DENIED.

I.  FACTS AND PROCEDURAL HISTORY

Plaintiff Penny Morris ("Morris") alleges that she developed tardive dyskinesia after taking metoclopramide, which is the generic formulation of the brand name drug, Reglan. Consequently, Morris and her husband filed suit against both the brand name and generic manufacturers of the drug on May 22, 2009. On November 23, 2009, this Court dismissed the brand name manufacturers because, under the LPLA, only the actual manufacturer may be held liable for injuries caused by a product. [Doc. No. 111].

On January 11, 2010, this Court adopted the Magistrate Judge's Report and Recommendation and dismissed all of Plaintiffs' remaining claims that did not arise under the LPLA. [Doc. No. 115]. On July 22, 2010, Plaintiffs filed their Fourth Amended Complaint

[Doc. No. 142], seeking relief in accordance with the LPLA. On October 19, 2011, this Court granted the Motion to Dismiss[1] [Doc. No. 183] filed by generic manufacturers Actavis Elizabeth LLC; Teva Pharmaceuticals USA, Inc.; and PLIVA, Inc. (collectively, "Defendants").

On November 18, 2011, Plaintiffs filed the instant Motion to Alter and/or Amend Judgment pursuant to FED. R. CIV. P. 59(e). [Doc. No. 214]. Defendants filed an Opposition [Doc. No. 217] on December 9, 2011. Plaintiffs filed a Reply [Doc. No. 220] on December 27, 2011. Defendants filed a Notice of Supplemental Authority [Doc. No. 222] on January 19, 2012.

In dismissing Defendants, this Court concluded that the Supreme Court's decision in *PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567 (2011) controlled. [Doc. No. 212]. In *Mensing*, the Supreme Court held that Food and Drug Administration ("FDA") regulations that prevent generic manufacturers from changing warning labels absent FDA approval or changes by brand name manufacturers resulted in an impossibility, or conflict, preemption of state law failure to warn claims against generic manufacturers because the manufacturers are unable to comply with both their federal regulatory duty and state law duty to warn. 131 S.Ct. at 2570-71. Based on *Mensing's* holding, this Court dismissed Defendants with prejudice after finding that all of Plaintiffs' claims sounded in state law failure to warn.

II.     **LAW AND ANALYSIS**

    A.     **Standards of Review**

        1.     **Motion to Alter or Amend Judgment**

"A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either

---

[1] Although Defendants entitled their filing as a motion to dismiss, they requested relief pursuant to Fed. R. Civ. P. 12(c), which is applicable to a motion for judgment on the pleadings.

a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003)) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "A Rule 59(e) motion 'calls into question the correctness of a judgment.'" *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

### 2. Motion for Judgment on the Pleadings

Plaintiffs pray that the Court amend its earlier ruling where it granted Defendants' request for relief pursuant to FED. R. CIV. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). Rule 12(c) or 12(b)(6) motions should be granted when, viewing the alleged facts in the light most favorable to the plaintiff, the complaint fails to state a claim that is facially plausible. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 Fed. App'x. 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

### B. Analysis

Plaintiffs argue that this Court dismissed claims based on theories of liability that *Mensing* does not preempt: (1) Defendant PLIVA's failure to warn based on a 2004 labeling

3

update; (2) Defendants' failure to properly test their products and report information; (3) Defendants' breach of express warranty; and (4) Defendant TEVA's failure to warn based on its status as a reference listed drug-holder. Plaintiffs asserted the first three theories in their Fourth Amended Complaint [Doc. No. 142], and the fourth theory is based on what Plaintiffs describe as newly discovered information.

### 1. PLIVA's Failure to Warn Based on a 2004 Labeling Update

Plaintiffs argue that *Mensing* does not support this Court's earlier dismissal of Defendant PLIVA because PLIVA failed to update its metoclopramide warning to reflect a 2004 labeling change made by the brand name manufacturer of Reglan. Thus, Plaintiffs assert that FDA regulations do not preempt their failure to warn claim because their fact pattern is distinguishable from *Mensing*.

The 1985 label for Reglan/metoclopramide warned "that 'tardive dyskinesia . . . may develop in patients treated with metoclopramide,' and the drug's package insert added that 'therapy longer than 12 weeks has not been evaluated and cannot be recommended.'" *Mensing*, 131 S.Ct. at 2572 (quoting Physicians' Desk Reference, 1635-36 (41st ed. 1987)). The label remained unchanged until 2004 when the brand name manufacturer strengthened the warning by adding the statement, "[t]herapy should not exceed 12 weeks in duration." 131 S.Ct. at 2573 (quoting Physicians' Desk Reference, 2902 (65th ed. 2011)). In 2009, the FDA ordered an even stronger warning: "Treatment with metoclopramide for longer than 12 weeks should be avoided in all but rare cases." *Id.*

In support of their Motion to Alter and/or Amend Judgment, Plaintiffs provide a March 11, 2011 letter from PLIVA's counsel addressed to attorneys nationwide who were involved in

metoclopramide litigation. [Doc. No. 214, Ex. H]. The letter disclosed that (1) in July 2004, Schwarz Pharma, the manufacturer of Reglan, received permission from the FDA to revise Reglan's warning label; (2) on February 25, 2011, PLIVA's attorneys learned that PLIVA had failed to incorporate the 2004 revisions "in certain post-2004 PLIVA metoclopramide package inserts"; and (3) PLIVA discontinued production of metoclopramide in December 2008. The letter further stated that,

> We are unaware of any plaintiff or plaintiff's prescribing doctor who has testified that he/she actually read or relied upon any post-2004 PLIVA metoclopramide package insert . . . . [I]t does not appear to be any plaintiff's contention that, had such language been included in a post-2004 PLIVA metoclopramide package insert, PLIVA would not be liable to that plaintiff. Nonetheless, we wish to ensure that you have complete and accurate discovery responses.

[*Id.*].

First, the Court notes that PLIVA's disclosure is not newly discovered evidence. In their Opposition to Defendants' Motion to Dismiss, Plaintiffs provided another letter conveying the same message sent by another of PLIVA's attorneys to the Clerk of the United States Supreme Court prior to oral arguments in *Mensing*. [Doc. No. 189-1, Ex. A]. That letter stated, "PLIVA is a defendant in *Mensing* alone, and the pharmacy records . . . reveal that Ms. Mensing last received PLIVA's metoclopramide product on July 13, 2004 – *before* FDA approved the above-referenced change to the Reglan® labeling, and thus *before* PLIVA lawfully could have implemented that change." [*Id.*]. The Supreme Court did not discuss PLIVA's letter in *Mensing* because this issue was not before the Court.[2]

---

[2]In *Mensing*, the Supreme Court consolidated lawsuits filed by two plaintiffs: Julie Demahy and Gladys Mensing, who filed in Louisiana and Minnesota, respectively. Demahy did not name PLIVA as a defendant as she alleged that she ingested metoclopramide produced by

Plaintiffs now argue that the *Mensing* decision left open this narrow claim: whether a generic manufacturer may be liable for failure to warn under state law if the manufacturer failed to update its warning label to reflect labeling changes made by the brand name manufacturer. They argue that this Court erroneously dismissed PLIVA because the FDA regulations do not preempt this narrow claim.

It is apparent that PLIVA breached what the Supreme Court described as the "duty of sameness" when it failed to adopt the 2004 labeling changes. 131 S.Ct at 2574-75. It follows that the FDA regulations should not preempt a failure to warn claim against a generic manufacturer who breached that duty. *See Fisher v. Pelstring*, No. 4:09-cv-00252, 2011 WL 4552464, *2-3 (D. S.C. Sep. 30, 2011) (finding that a generic manufacturer's failure to timely update its product's warning label affects the *Mensing* preemption analysis).

Plaintiffs' Fourth Amended Complaint, filed on July 22, 2010, understandably does not allege PLIVA's non-compliance with the FDA regulations because PLIVA did not make the disclosure until the following year. Nevertheless, the Complaint alleges that Morris began taking Reglan/metoclopramide in early 2006, that she ingested it through July 2008 and that she began to exhibit symptoms of tardive dyskinesia in late 2008. [Doc. No. 142, ¶¶ 3.02, 3.09-.10]. Thus, the Complaint alleges that Morris ingested Reglan/metoclopramide for the entire time that PLIVA failed to include the revised 2004 warning.

However, the Complaint also alleges that, in 2009, the FDA "recognized the inadequate nature of Defendants' labels and warnings for Reglan and issued an advisory requiring the addition of a [stronger] warning." [Doc. No. 142, ¶ 3.13]. Because the Complaint does not

---

Actavis.

address the 2004 warning label, or any previous warning labels, it follows that Plaintiffs inherently contend that **all pre-2009 labeling** was inadequate. Consequently, even if PLIVA had complied with FDA regulations by adopting the 2004 revision, the Complaint would still allege that PLIVA sold metoclopramide under an inadequate warning.

Plaintiffs raised PLIVA's failure to update its labeling for the first time in their Opposition to Defendants' Motion to Dismiss. [Doc. No. 189, p. 18]. At that time, the Court could have treated this new claim as a motion to amend the complaint under FED. R. CIV. P. 15(a). *Stover v. Hattiesburg Pub. School Dist.*, 549 F.3d 985, 989, n.2 (5th Cir. 2008) (citing *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992)). However, Plaintiffs are not *pro se* plaintiffs unfamiliar with the rules of civil procedure. *See Riley v. School Bd. Union Parish*, 379 Fed. Appx. 335, *5 (5th Cir. 2010) (District court should give greater latitude to amend in response to a pleading by a *pro se* litigant who has not previously amended her complaint). Plaintiffs are represented by experienced counsel who is currently litigating numerous cases against metoclopramide manufacturers throughout the country in the post-*Mensing* landscape.[3] Plaintiffs have amended their Complaint four times. Even if PLIVA's non-compliance with the duty of sameness escapes the preemption identified in *Mensing*, a fifth amendment in this case would be futile because any claim based on the 2004 label would be inconsistent with Plaintiffs' assertion that all pre-2009 labeling failed to adequately warn. Further, it is impossible to construe a facially plausible claim from Plaintiffs' Fourth Amended

---

[3]The following is a sampling of the cases in which Plaintiffs' counsel is named in Reglan/metoclopramide litigation: *Mensing v. Wyeth*, 588 F.3d 603 (8th Cir. 2009), *rev'd PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567 (2011); *Smith v. Wyeth*, 657 F.3d 420 (6th Cir. 2011); *Fullington v. PLIVA, Inc.*, No. 4:10-cv-00236, 2011 WL 6153608 (E.D. Ark. Dec. 12, 2011); *Fisher v. Pelstring*, No. 4:09-cv-00252, 2011 WL 4552464 (D. S.C. Sep. 30, 2011).

Complaint because PLIVA's warning label would have been inadequate even if it had complied with the 2004 revision.

Accordingly, Plaintiffs' motion is DENIED as to their failure to warn claim against PLIVA.

### 2. Defendants' Failure to Properly Test and Report

Plaintiffs next contend that this Court failed to address their argument that *Mensing* does not preempt their claim that Defendants failed to properly test their product and report their findings as required by federal laws and FDA regulations. [Doc. No. 214-1, pp. 15-18]. Plaintiffs rely on a pre-*Mensing,* Fifth Circuit decision in arguing that Defendants' failure to comply with federal regulations subjects them to state law liability for failure to test and report. *See Hughes v. Boston Scientific Corp.*, 631 F.3d 762, 769 (5th Cir. 2011) (holding that the plaintiff could proceed with a failure to warn claim under Mississippi law after the medical device manufacturer defendant failed to report injuries and malfunctions as required by FDA regulations).

The Court finds that *Hughes* is distinguishable from the lawsuit here. First, *Hughes* concerns a medical device manufacturer's potential liability in a failure to warn claim under Mississippi products liability law. *Id.* Here, Plaintiffs fail to identify an analagous duty under the LPLA. Second, in *Mensing*, which followed *Hughes*, the Supreme Court held that FDA regulations preempt state law failure to warn claims against generic pharmaceutical manufacturers. 131 S.Ct. at 2570-71. Thus, to the extent that *Hughes* may apply here, *Mensing* overruled it. Plaintiffs' reliance on *Hughes* is misplaced for the purpose of determining a generic pharmaceutical manufacturer's liability under the LPLA.

8

Additionally, the Food, Drug, and Cosmetics Act ("FDCA") provides that, "all such proceedings for the enforcement, or to restrain violations of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). Consequently, Plaintiffs have no standing to seek a remedy based on Defendants' alleged violation of FDA regulations because the FDCA does not provide a private right of action. *See Gaspard v. Our Lady of Lourdes Reg'l Med. Ctr.*, No. 08-cv-622, 2009 U.S. Dist. LEXIS 254112 (W.D. La. March 25, 2009) ("It is well settled that the FDCA creates no private right of action") (citing *Scott v. Pfizer, Inc.*, 182 Fed. Appx. 312, 315 (5th Cir. 2006) (unpublished opinion) (affirming dismissal of claim because the plaintiff did not show that the FDCA creates a private right of action)).

Accordingly, Plaintiffs' motion is DENIED as to their failure to test and report claim because Plaintiffs do not allege a colorable claim under the LPLA and the FDCA does not grant a private right of action.

### 3. Defendants' Breach of Express Warranty

Plaintiffs also assert that this Court erroneously found that FDA regulations preempted their claim that Defendants' activities constituted a breach of express warranty. They argue that Defendants distributed "their products into the stream of commerce with package inserts containing false information" and that "false information appearing in the package insert for [metoclopramide] resulted in overexposure to the drug." [Doc. No. 214-1, p. 19].

FDA regulations preclude generic drug manufacturers from unilaterally modifying their warning labels. *Mensing*, 131 S.Ct. at 2575 (a generic drug manufacturer may unilaterally change its warning label "only when [it] changes its label to match an updated brand-name label or to follow the FDA's instructions"). Therefore, Plaintiffs' breach of express warranty claim is

9

preempted because the allegation that Defendants' package inserts, or labeling, contained incorrect information sounds in failure to warn.

Accordingly, Plaintiffs' motion is DENIED as to their breach of express warranty claim.

### 4. TEVA's Failure to Warn Based on Its Status as a Reference Listed Drug-Holder

Finally, Plaintiffs argue that this Court should amend its judgment based on "newly discovered information identifying . . . TEVA as one of the [reference listed drug ("RLD")] holders for metoclopramide prior to and during the time Plaintiff ingested the drug." [Doc. No. 214-1, p. 21]. An RLD is a drug designated by the FDA as the product upon which generic manufacturers must rely when they apply to produce and market a generic drug. 21 C.F.R. § 314.3.

Plaintiffs refer to a 2003 publication, the "FDA Orange Book," which identifies TEVA's metoclopramide as an RLD, as newly discovered information.[4] The Court again notes that this is not newly discovered evidence.[5]

Plaintiffs assert that a generic manufacturer, which has a product classified as an RLD, has the same discretion as a brand name manufacturer to unilaterally change the product's warning label. Thus, they argue that FDA regulations do not preempt a failure to warn claim

---

[4]The Court takes judicial notice that "The publication *Approved Drug Products with Therapeutic Equivalence Evaluations* (the List, commonly known as the Orange Book) identifies drug products approved on the basis of safety and effectiveness by the [FDA]. . . ." http://www.fda.gov/Drugs/InformationOnDrugs/ucm129662.htm (Last visited on January 10, 2012).

[5]A 2003 publication was available and could have been discovered in the exercise of due diligence well before the filing of this motion. Nevertheless, the Court will consider Plaintiffs' substantive arguments.

10

against a generic manufacturer if its drug is classified as an RLD.

Defendants rebut this argument, asserting that a drug's status as an RLD is not synonymous with status as a brand name drug. They point out that the FDA confers RLD status on a generic manufacturer's product only when the brand name manufacturer ceases production and leaves the marketplace exclusively to generic manufacturers. The generic manufacturer with a drug classified as an RLD does not, however, incur the responsibility of unilaterally updating the product's warning label. Rather, when the FDA designates a generic manufacturer's product as an RLD, the FDA retains responsibility for providing guidance to the manufacturers as to any necessary changes to the drug's labeling. [Doc. No. 217, pp. 18-21]; *see* 72 Fed. Reg. 39629-01 (describing how the FDA deals with generic manufacturers after designating one of their products as an RLD).

Plaintiffs' argument is not availing because it assumes, without authority, that the FDA considered TEVA to be a brand name manufacturer with the requisite duty to unilaterally change its product's labeling simply because the FDA designated TEVA's metoclopramide as the RLD. *See Moore v. Mylan Inc.*, No. 1:11–cv–03037, 2012 WL 123986, at *6-7 (N.D. Ga. Jan. 5, 2012) (discrediting the argument that the FDA's designation of a generic product as an RLD confers its manufacturer with the same rights and obligations as a brand name manufacturer).

Accordingly, Plaintiffs' motion is DENIED as to their failure to warn claim against TEVA based on its status as a reference listed drug-holder.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Alter and/or Amend Judgment [Doc. No. 214] is DENIED.

MONROE, LOUISIANA, this 21 day of February, 2012.

ROBERT G. JAMES
U.S. DISTRICT JUDGE